IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 05-182 |
| | ) |
| FREDERICK NEAL | ) |

OPINION

On June 23, 2005, a federal grand jury returned a one-count indictment against Frederick Neal ("defendant") charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§922(g)(1) and 924(e). Currently before the court is defendant's pretrial motion to suppress. A suppression hearing was held before the court on January 30, 2006. For the reasons which follow, defendant's motion to suppress will be denied.

On the afternoon of March 28, 2004, Pittsburgh city police officers approached defendant as he met with several other men on North Homewood Street near Kelly Avenue in the city of Pittsburgh. As a result of the ensuing encounter, police seized the .380 caliber pistol which is the subject of defendant's indictment. Defendant's motion seeks suppression of that firearm as evidence at trial, contending that the incident in question went beyond a mere police-citizen encounter and that the officers lacked reasonable suspicion to conduct an investigatory Terry-stop of defendant.

Upon due consideration of the testimony received at the suppression hearing, as well as the parties' briefs, the court finds that the government has met its burden of proving that the stop in question was reasonable and that the subsequent seizure of the firearm in question comported with the dictates of the Fourth Amendment.

The Fourth Amendment protects individuals from "unreasonable searches and seizures." United States Constitution, amend. IV. On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable. United States v. Ritter, 416 F.3d 256, 261 (3d Cir. 2005).

To meet its burden of proof in this case, the government called two witnesses, Pittsburgh City Police Officers James Kohnen and David Cammarata, to testify at the suppression hearing. The defense called no witnesses. Based on the uncontradicted testimony of Officers Kohnen and Cammarata, the court finds that the facts of the afternoon in question are as follows.

On March 28, 2004, around 12:30 p.m., Officer Kohnen, in an unmarked vehicle, was patrolling North Homewood Avenue and Kelly Streets when his attention was drawn to two males who were running in and out of traffic showing five-gallon, industrial size cans of paint. Officer Kohnen's suspicions were aroused because the area in question is a high crime area and the men were operating across

2

the street from an establishment called the "Zone" which is known to traffic in stolen goods. He also suspected that the men may not have had the requisite permit necessary under a city ordinance to be selling items on the street. Officer Kohnen drove around the block, parked in an alley where he could observe the men and called for back-up.

While in the alley, Officer Kohnen witnessed a beat-up station wagon pull up and stop behind the paint sellers' Dodge Dynasty. Two men exited the station wagon and went directly to the trunk of the Dynasty. Shortly thereafter, Officer Kohnen's back-up arrived. A police wagon pulled up directly behind the station wagon, while Officer Kohnen stopped his vehicle beside the station wagon. A marked police vehicle also responded and pulled in ahead of the Dynasty. In all there were four officers on the scene. Officer Kohnen exited his vehicle with his badge displayed, but did not draw his weapon, and he testified that none of the other officers had their weapons drawn either.

As Officer Kohnen exited his vehicle, defendant was positioned near the trunk of the paint sellers' vehicle, while the individual with whom defendant had arrived at the scene was seated in the front passenger side seat of the station wagon. The two paint sellers were located near the driver's door of the Dynasty. As Officer Kohnen approached the area where defendant was standing, he asked, in a conversational tone, all four of the men

3

for identification. Defendant reached into his back pocket for his wallet and, as he pulled it out, Officer Kohnen observed a small bag of "shake", which he described as "crumbs" of crack cocaine, fall from defendant's left hand. Immediately recognizing from his experience that the bag contained shake, Officer Kohnen approached defendant in order to place him under arrest for possession of narcotics.

As defendant turned to face the station wagon, Officer Kohnen observed defendant's left hand go to his waistband. Defendant pulled out a gun and dropped it into the open driver's side window of the Dynasty, where it fell with an audible thud. Officer Kohnen immediately yelled "gun!" then handcuffed and placed defendant under arrest. After a search incident to arrest, defendant was put into the police wagon and his weapon was recovered from the station wagon.

The government also called Officer Cammarata, who was driving the police wagon that responded as back-up for Officer Kohnen. Officer Cammarata testified that after arriving at the scene, he and his partner, Officer David Proctor, exited the police wagon, but that neither drew his weapon until they heard Officer Kohnen yell "gun!" He also testified that the lights of the police wagon were activated at the scene for safety reasons.

Under the foregoing facts, defendant argues that the firearm seized should be suppressed because, one, Officer Kohnen's request

4

for identification from defendant went beyond a mere police-citizen encounter and constituted a seizure, and, two, the officers lacked reasonable suspicion that defendant was engaged in criminal activity to justify an investigatory Terry-stop.

As an initial matter, the court finds no constitutional violation in Officer Kohnen asking defendant for his identification. It is well settled that police officers may approach individuals even without reasonable suspicion or probable cause, and may question such individuals, without implicating the Fourth Amendment. Florida v. Royer, 460 U.S. 491, 497 (1983). An individual approached in this manner "need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." Royer, 460 U.S. at 498.

Thus, even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions and ask for identification, provided they do not induce cooperation by coercive means. United States v. Lockett, 406 F.3d 207, 211 (3d Cir. 2005)(citing Florida v. Bostick, 501 U.S. 429, 434-35 (1991)). If a reasonable person would feel free to terminate the encounter, then he or she has not been seized. Id.

Here, under the totality of the circumstances, the court finds that defendant was not seized when Officer Kohnen asked for his identification. The encounter in question took place on the street in an open public area. The officers did not block

5

defendant's path or otherwise control his movement. The only factor advanced by defendant suggesting otherwise was the fact that there were 3 police vehicles with their lights flashing at the scene. However, although there were four officers present, none had a weapon drawn and both Officer Kohnen and Officer Cammarata indicated that the lights on the vehicles were activated solely for safety reasons. In addition, Officer Kohnen gave no indication, either in the tone of his voice or the words that he used when requesting identification, that he suspected defendant of doing anything.

Thus, there simply is no indication from the facts as established at the hearing that Officer Kohnen induced defendant's cooperation in producing identification by coercive means. He simply asked defendant for his identification, which an officer may do without implicating the Fourth Amendment. Under these circumstances, the court finds that a reasonable person would have felt free to terminate the encounter and walk away. Accordingly, Officer Kohnen's request for identification did not constitute a seizure. See Lockett, 406 F.3d at 211 (no seizure under similar factual circumstances)

Moreover, even if the court had been inclined to agree with defendant's argument that Officer Kohnen's request went beyond a mere police-citizen encounter, the firearm nevertheless should not be suppressed because the court also finds that Officer Kohnen had

AO 72A
(Rev.8/82)

sufficient reasonable suspicion that criminal activity was afoot to justify an investigatory Terry-stop of defendant.

Under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, an officer may conduct a brief, investigatory stop when that officer has "a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123, 12 (2000). Although reasonable suspicion is less demanding than probable cause, the Fourth Amendment does require that an officer making a stop have some level of objective justification for that stop. United States v. Sokolow, 490 U.S. 1, 7 (1989). In evaluating whether a particular stop was justified, courts must look at the totality of the circumstances surrounding the stop. Sokolow, 490 U.S. at 8 (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)).

Here, under the totality of the circumstances as established at the hearing, Officer Kohnen clearly had reasonable suspicion to suspect criminal activity was afoot. Officer Kohnen, an officer with 11 years' experience with the Pittsburgh Police Department after 6 years as a military policeman, observed two men who appeared to be trying to sell 5-gallon industrial sized paint cans out of the trunk of a vehicle on a street corner in a high crime area on a Sunday afternoon. Officer Kohnen knew that there had been a rash of burglaries in the area recently and that the men were positioned directly across the street from an establishment

known for trafficking in stolen goods. He also was aware that the City of Pittsburgh has an ordinance requiring street vendors to have a permit to peddle their goods. The court finds that all of the foregoing factors together support Officer Kohnen's reasonable suspicion that criminal activity may have been afoot to justify a brief investigatory Terry-stop of the individuals at the scene, including defendant. See, e.g., Johnson v. Campbell, 332 F.3d 199 (3d Cir. 2003) (factors in reasonableness of Terry-stop can include detainee's location, history of crime in the area and officer's commonsense judgments and inferences about human behavior).

The court finds unpersuasive defendant's contention that, even if Officer Kohnen may have had reasonable suspicion of illegal activity by the first two individuals at the scene whom he had observed selling paint out of the trunk of the Dodge Dynasty, he had no reason to suspect defendant, as it is not a crime to buy paint from an unlicensed vendor. However, Officer Kohnen had no way of knowing if defendant was a potential buyer of the paint or if instead he was a partner of the sellers. Defendant did not just happen upon the scene as a passerby, he pulled his vehicle directly behind the Dodge Dynasty and actually was engaged in some sort of interaction with the sellers. As Officer Kohnen had a reasonable suspicion to believe criminal activity may have been afoot, he had the authority to investigate all four of the

individuals at the scene in an effort to determine what was transpiring.

The evidence in this case as adduced at the suppression hearing establishes that Officer Kohnen's initial request for identification constituted nothing more than a mere police-citizen encounter and that, even assuming <u>arguendo</u> that his request constituted a seizure of defendant, he nevertheless had reasonable suspicion that criminal activity was afoot sufficient to conduct an investigatory <u>Terry</u>-stop of defendant along with the other individuals involved. Officer Kohnen's subsequent observation of defendant dropping drugs from his back pocket then gave him probable cause to arrest defendant and defendant's actions in dropping a weapon into the car window in view of Officer Kohnen gave him the authority to seize the weapon. Accordingly, defendant's motion to suppress must be denied.

An appropriate order will follow.

*[signature]*
Gustave Diamond
United States District Judge

cc: Scott W. Brady
    Assistant U.S. Attorney

    Charles Schwartz, Esq.
    4084 Mt. Royal Boulevard
    Allison Park, PA 15101